# LADD *v.* HARVEY & *a.*

Upon a motion for the appointment of a receiver after the answer is filed, affidavits furnished by the orator will be considered by the court in connection with the answer, particularly where the respondent has also furnished affidavits, and has not objected to the character of the evidence.

It is not necessary that the bill should contain a prayer for a receiver, if the facts stated authorize the appointment.

But upon a motion to appoint a receiver *ex parte*, the circumstances should be distinctly stated in the petition upon which the application is founded.

The exercise of the power to appoint a receiver rests in the sound discretion of the court upon the circumstances.

It will be proper to exercise the power, if the property in dispute be in danger from actual or expected insolvency.

Where personal property was bequeathed to the respondent's wife with an executory devise over to the orator, and upon the death of the wife the property

Ladd *v.* Harvey.

came into the possession of the respondent, the title to it being in dispute, and there was evidence that the respondent had conveyed his real estate, and had no property that could be reached by an execution, it was *held*, that a receiver should be appointed.

The same words which create an estate tail as to freeholds, will give an absolute interest in chattels.

But limitations and remainders over in chattels are recognized by the law.

Whether there be a bequest of the thing for life, or of its use only, a limitation, over upon the death of the legatee, will be supported as in the nature of an executory devise.

Where there is a bequest of personal property, courts are inclined to discover and lay hold of any circumstances or expressions affording a ground for construing words referring to a dying without issue, to mean a failure of issue at the time of the death of the ancestor, in order that a limitation over upon that event may be supported.

Personal property was given by a will to L. and her heirs, "in case she should leave at the time of her decease a living child or children born of her body," otherwise the property was to go to the orator. *Held*, that the will referred to the legatees dying without issue living at the time of her death, and that the limitation over to the orator was a good executory devise.

Although the word "devise" is more specially appropriated to a gift of lands, yet the terms "bequest," and "devise," are used indifferently, and legatees may take under a devise of lands, if the context of the will show that such was the testator's intention.

IN EQUITY. The bill was brought by Nathaniel Ladd against Daniel W. Ladd, executor of the will of Lydia Watson, Matthew J. Harvey, executor of the will of Louisa L. W. Harvey, Dudley L. Harvey, Nathaniel G. Harvey, and William Plumer.

The following case was stated in the bill: On the 15th day of November, 1839, Lydia Watson made her will, and died on the 17th day of April, 1847. Her will was proved on the 12th day of May, 1847. She devised to Louisa L. Ladd, daughter of Nathaniel Ladd, her "Lawrence meadow." Also, "of my household stuff and furniture, such as she may choose, to the amount of two hundred dollars, and also two thousand dollars to be paid her by Daniel W. Ladd, Esq., out of his own estate, in one year after my decease; also all the rest or remainder of my estate." The will then contained the following clause: "It is my will and intention that the foregoing devise and bequests shall hold to her, the said Louisa, and her heirs forever, in case she should leave, at the time of her decease, a living child or

children born of her body, but otherwise that it should revert to her father, Nathaniel Ladd, to hold to him, his heirs and assigns forever." Of this will, Daniel W. Ladd was made the executor.

On the 23d day of December, 1840, Louisa L. Ladd, the daughter of the orator, married Nathaniel G. Harvey, one of the respondents. On the 13th day of June, 1847, Louisa selected a portion of the household stuff and furniture mentioned in the will, to the amount of two hundred dollars, and received it from the executor, and also received of him other property belonging to the estate, of the value of $180.68, according to the provision in the will. On the 16th day of December, 1847, she received of him the sum of $2000, according to the will, and on the same day lent $1000 of it to William Plumer, one of the respondents, taking therefor his note, payable to her or her order on demand with interest. As a part of this sum of $2000, she received of the executor a promissory note, made by one Dudley Freeze, for $640, which was afterwards paid, and the money is now in the hands of Nathaniel G. Harvey, or of Matthew J. Harvey, or in some place unknown to the orator, but known to the respondents.

On the 17th day of May, 1848, Louisa being sick and not expected to recover, and being induced by the importunity of her husband, Nathaniel G. Harvey, who was contriving to defraud the orator, exchanged Plumer's note to her, for another note for the sum of $1020.83, payable to Nathaniel G. Harvey or his order. On the same day she made her will, devising all her property, of whatever description, to her husband, and made Matthew J. Harvey her executor. She died on the 26th day of May, and in the month of June following, her will was proved by her executor, who thereupon received property to a large amount, bequeathed to her by the will of Lydia Watson.

On the 3d day of June, 1848, Nathaniel G. Harvey procured Plumer to exchange the last-mentioned note, for another note for the same sum, payable to Dudley L. Harvey, a brother of Nathaniel, who received the note, intending to put it beyond the control of the orator, and held it in trust for Nathaniel, knowing that the orator claimed it as his property. Before and after the

death of Louisa, Nathaniel made sundry collections of money, and exchanges of the securities given to Louisa by the executor, which are unknown to the orator. Louisa did not leave, at her decease, any living child born of her body, and did not exhaust, spend, or consume, any part of the sum of $2000 before mentioned.

The personal estate of Lydia Watson included in the inventory filed on the 9th day of June, 1847, was appraised at the sum of $3,374.18, and there was at that time crockery ware and other household furniture in the hands of Nathaniel G. Harvey, not included in the inventory, nor accounted for by the executor, which belongs to the orator, being the remainder of the "household stuff and furniture" bequeathed to him by the will of Lydia Watson. Daniel W. Ladd, the executor, also holds money, stocks, and other property bequeathed to Louisa by Mrs. Watson, but which, by Louisa's death without children, now belongs to the orator.

On the 29th day of November, 1848, the orator demanded of Daniel W. Ladd the property in his possession, and also requested Plumer to pay to him the amount due on the note to Dudley L. Harvey. On the 28th day of November, he requested Matthew J. Harvey to deliver to him the property in his hands, and requested Nathaniel G. Harvey to deliver to him the property derived by Louisa from the estate of Mrs. Watson, and the property in his hands belonging to Mrs. Watson at her decease, consisting of crockery ware and other household furniture. He also demanded of Dudley L. Harvey the note of William Plumer, and any money he had received thereon, and all property he had received belonging to the estate of Louisa or of Mrs. Watson.

The bill prays for an account of the property in the hands of Nathaniel, not inventoried by Daniel W. Ladd, the executor, as part of the estate of Mrs. Watson; also of the property in the hands of the executor, bequeathed to Louisa by Mrs. Watson, but never paid to her or to her executor, and that it may be decreed to be delivered to the orator. It also prays a decree that the orator is entitled to the personal estate bequeathed by Mrs. Watson to Louisa, and also the real estate devised to her, and

43 *

that the will of Louisa, so far as it purports to dispose of the property by her received under Mrs. Watson's will, may be decreed to be void, and that the defendants may be enjoined from further changing the securities, or disposing of the money or other property claimed by the orator.

The answer of Daniel W. Ladd, the executor of Mrs. Watson, states, that on the 11th day of October, 1848, he settled his first account of administration, and that there is in his hands as executor the sum of $1,064.54.

The answer of Nathaniel G. Harvey states, that on the 1st day of April, 1848, Dudley Freeze paid to Louisa L. W. Harvey the sum of $350, which was indorsed on his note for $640, and that on the 17th day of May, 1848, she requested Freeze to make and deliver to him a new note for the balance due, meaning thereby to vest in him the property in the note and in the debt for which it was given, which Freeze accordingly did, and that since her death he has received the sum due on the note, and applied it to his own use, believing it to be his property. On the 1st day of May she lent $60 of this sum of $350, to Dudley L. Harvey, taking therefor, a note payable to herself or order; and in the month of April, 1848, she lent the further sum of $50 to Gardner Tilton, taking therefor a similar note.

On the 17th day of May, 1848, Louisa was sick and did not expect to recover, and requested him to go to a chest belonging to her and take therefrom her pocket-book, and retain it with its contents, saying that she desired him to have the possession of it while she lived. He thereupon took possession of it, and it contained $70, which he thinks was part of the sum of $350 above mentioned. On the 1st day of May, 1848, she gave him $22 with which to pay a physician's bill, and $20 to pay an assessment upon two shares in the Portsmouth and Concord Railroad Corporation, and $6 to pay for some lumber. These sums were all that he received of the sum of $350, and the remainder of it paid to her was, as he believes, spent by her. On the 17th day of May, 1848, she indorsed and delivered to him the two notes for $50 and $60, intending to vest in him the property in them and in the debts for which they were given, and since

her death he has received the amount due on them and used it, claiming it as his own property. On the same day she requested Plumer to take up his note for $1000, and to make another note for that sum payable to the respondent, meaning thereby to vest in him the property in the note, which was accordingly done. He denies that he ever importuned her to do so, or that he ever induced or requested her to make her will. He believes that no property derived by her from Mrs. Watson, or from any other source, came into the hands of Matthew J. Harvey, her executor, except the receipts for the assessments before mentioned.

On the 3d day of June, 1848, the respondent gave up to Plumer his note for $1,020.83, and received from him other notes and money therefor, the notes being signed by Dudley L. Harvey, which were paid in the month of September, with the exception of a note for $70, which the respondent still holds. He denies that Harvey held Plumer's note in trust for him, nor does he believe that Harvey then knew that the orator claimed the note, and he denies that Harvey received it with any knowledge of a design on the part of the respondent to put the note beyond the control of the orator.

In the month of January, 1848, Louisa gave him the sums of $140 and of $6, to pay some of his debts with, which sums he believes were a part of the sum of $2000 above mentioned, and the respondent alleges that he never made any other collections of money or exchanges of securities given to her by Daniel W. Ladd, the executor, in payment of the sum of $2000, except as above stated.

Louisa had one child, which died on the day of its birth, and she did not leave, at the time of her decease, any living child born of her body. And excepting as above stated, she exhausted, spent, and consumed the whole of the sum of $2000.

The respondent denies that there was in his hands, when the executor returned the inventory of Mrs. Watson's estate, or at any other time, any household furniture, &c., of her estate, and which belongs to the orator, and he says that he has not in his hands property derived from Louisa exceeding in amount the sum of $1250.

Ladd *v.* Harvey.

The answers of the other defendants contain no additional facts material to be stated.

Upon the coming in of the answers, *Emery Stickney* and *Wells* for the orator, moved that a receiver be appointed to take possession of the property in dispute in the hands of Nathaniel G. Harvey. They offered evidence that since he received the property, he had conveyed his real estate, and had no property that could be reached by an execution, and they moved for an order that he be directed to deliver to the receiver all the property in dispute now in his possession. They contended that it was the practice to appoint a receiver before answer, where fraud is clearly proved by affidavits, or where it is shown that imminent danger would ensue, unless the property were taken under the care of the court. 2 Bro. Ch. Rep. 131; *Hugonin* v. *Basely*, 13 Vesey, 104; *Middleton* v. *Dodwell*, Ib. 266; *Duckworth* v. *Trafford*, 18 Vesey, 283; *Metcalfe* v. *Pulvertaft*, 1 Ves. & B. 180. Numerous cases in which a Court of Equity has appointed a receiver *pendente lite* are referred to in Eden on Injunctions, 354, 355.

GILCHRIST, C. J. It has been said that where an application for a receiver is made after answer, the plaintiff can rely only upon the admissions in the answer. But where a notice for a hearing of a motion for a receiver on the 2d of June was given, but before the motion was heard the answer came in, Lord *Eldon* permitted the plaintiff's affidavits to be read, and regarded the answer as a counter affidavit. *Goodman* v. *Whitcomb*, 1 Jac. & W. 589. And where one defendant only, of two material defendants had answered, the plaintiff was permitted to read his affidavit in support of the application, and the answer which had come in was treated as an affidavit. *Kershaw* v. *Mathews*, 1 Russ. 361. As the object of the Court is to be informed of the true circumstances of the case, there seems to be no reason why affidavits taken with proper restrictions, should not be considered in connection with the answer, particularly in the present case, where the respondent has produced affidavits on his side, and where he has not objected to the character of the evidence.

Ladd *v.* Harvey.

It is not necessary that the bill should contain a prayer for a receiver, if the facts stated authorize the appointment. *Malcolm* v. *Montgomery*, 2 Molloy, 500. But upon a motion to appoint a receiver *ex parte*, the circumstances should be distinctly stated in the petition on which the application is founded. *Verplank* v. *Mer. Ins. Co.* 2 Paige, 438.

As to the main question involved in this motion, we think the facts authorize the appointment of a receiver, consistently with the practice of courts of equity. Where there is some evil actually existing, or some evidence of danger to the property, upon the filing of the answer a receiver will be appointed. *Hugonin* v. *Basely*, 13 Vesey, 105. So where before the answer there is evidence that the property is in danger from insolvency, actually existing or expected. *Middleton* v. *Dodswell*, 13 Vesey, 266. And a receiver will be appointed before answer where justice requires it. *Duckworth* v. *Trafford*, 18 Vesey, 283. The exercise of the power to appoint a receiver, must depend upon sound discretion, and in a case in which it must appear fit and reasonable that some indifferent person under approved security should receive and distribute the issues and profits for the greater security of all the parties concerned. *Verplank* v. *Caines*, 1 Johns. Ch. 57. A receiver is proper if the fund is in danger, and this principle reconciles the cases found in the books. *Orphan Asylum* v. *McCartee*, 1 Hopk. 435.

We are of opinion, that in this case, it is proper a receiver should be appointed. The following order was then passed: —

Ordered, that Henry F. French, Esq., be appointed receiver in this case, and that a commission issue to him accordingly, upon his giving bond for the faithful discharge of his duties, according to the seventy-second rule of this court. He is to demand and receive from Nathaniel G. Harvey all the property now in his possession, to which his late wife Louisa was entitled by the will of Lydia Watson, deceased, and upon receiving the same is to hold it subject to the future order of this court.

It was also ordered, that an injunction issue restraining all the defendants, until the further order of this Court, from pay-

ing to the said Harvey any money in discharge of any debt which arose out of the sum of $2000, bequeathed by Lydia Watson to Louisa L. Ladd, and from making any further change in the securities given for said sum or any part thereof, and from delivering to the said Harvey any personal property bequeathed by the said Lydia to the said Louisa.

And it was also ordered, that the said Harvey deliver to the receiver all the personal property in his possession to which his wife became entitled by virtue of the will.

. The main question in the case was then argued by *Christie,* for the respondents. In the will of Lydia Watson, the devise over to Nathaniel Ladd applies to and embraces only the real estate devised to Louisa Ladd, and not the personal estate. Such is the only fair and grammatical construction of the clause in the will containing the devise over. That clause is as follows, viz. : " It is my will and intention that the foregoing devise and bequests shall hold to her the said Louisa and her heirs forever, in case she should leave at the time of her decease a living child, or children born of her body, but otherwise that *it* should revert to her father, Nathaniel Ladd, to hold to him and his heirs and assigns forever."

" It " in case of the happening of the contingency specified, is devised over.

What does this pronoun *it,* mean or stand for ?

It clearly means and stands for " the foregoing devise," and for nothing more or less.

The words " foregoing devise and bequest," as used in the first clause of this section of the will, cover and embrace all that had before been given to Louisa. The word *devise* covers and stands for the real estate, (which is in fact only the Lawrence meadow,) and the word " bequests," covers the personal estate. The pronoun *it,* cannot by any fair construction be understood to mean or stand for both the words " devise and bequest;" but only for the former.

Substituting, then, the words for which the word " it " stands, it reads as follows: " It is my will, &c., that the foregoing

devise and bequests shall hold to her, the said Louisa and her heirs forever, in case she shall leave at the time of her decease, a living child, or children born of her body, but otherwise that the foregoing *devise* should revert to her father, Nathaniel Ladd, to hold to him and his heirs and assigns forever."

If the clause had been written thus, it seems to us that it would be clear that the devise over, would have embraced the real estate only, that was devised to Louisa, but not the personal estate that was bequeathed to her ; the word *devise* being the appropriate term to pass the real estate, and the word *bequeathe.* being applicable to personal estate only, in its proper meaning. But if the word " *it* " stands instead of and means " the forego-. ing devise," then this clause must be construed just as it must. and would be were those words inserted and used instead of " *it.*"

Again, the limitation of the devise over, " to hold to him, his heirs and assigns forever," seems to favor the restriction of the devise over to real estate, as these words are not necessary to pass personal estate. There is nothing in the will leading to or requiring any other construction of the devise over. In other words, there is nothing to guide or control in the construction of this clause of the will, but the fair grammatical interpretation of its own language, and this, we contend, confines the devise over to the real estate given to Louisa.

The rule of construction is not to make any intendment contrary to the plain and usual sense of words, unless from other parts of the will it is clearly required. Every word is to have effect according to its natural and common import. 7 Vesey, 368.

*Emery*, for the orator.

This cause has been set down for a hearing upon the bill and answers. The main question in the cause and the one that must be first considered, arises upon the 8th and 9th clauses in the will of Mrs. Lydia Watson, which are as follows :

8. I give and bequeathe and devise to Louisa L. Ladd before named, my Lawrence meadow, so called, adjoining lands of

David Lawrence and William Stearns; also, of my household stuff and furniture, such as she may choose, to the amount of two hundred dollars; and also two thousand dollars, to be paid her by Daniel W. Ladd, Esq., out of his own estate in one year after my decease; also, all the rest and remainder of my estate, real, personal, or mixed, not herein and hereby otherwise bequeathed and devised.

9. It is my will and intention, that the foregoing devise and bequest shall hold to her, the said Louisa, and her heirs forever, in case she should leave at the time of her decease a living child or children born of her body; but otherwise, that it should revert to her father, Nathaniel Ladd, to hold to him, his heirs, and assigns forever.

The bill alleges and the answers admit, that Louisa L. Ladd died after her marriage with Nathaniel G. Harvey and did not leave at her decease any living child or children born of her body; and it further appears, that Louisa before her death made a will, wherein she gave all her property to her husband.

The question arising upon this state of facts is, has the complainant, Nathaniel Ladd, now any right or title to the property given as above named by Mrs. Watson to his daughter?

The complainant contends, that the limitation over to him is good as an executory devise; and that all the personal estate, which only is the subject-matter of controversy in this cause, by the death of the said Louisa without leaving a child or children born of her body living at the time of her decease, became absolutely his property.

The main question in the construction of wills is, what was the intention of the testator? This is a point too well settled to need authority to support it. Taking the words of the two clauses of the will of Mrs. Watson in their usual and common signification, and it would seem as though there could not be any doubt as to what was her intention. She evidently and clearly intended, that in the event of Louisa dying leaving no child of her own body living at the time of her death, the property should go to the complainant.

The law perfectly accords with this position, and is thus stated

in a book of high authority upon this subject : — " Wherever a a term or chattel is bequeathed to a person, and if he die without *leaving* issue, to another, the failure of issue intended is held to be, a failure of *issue living at the death of the first taker*, thus giving literal effect to the word leaving, which of course, in its common acceptation, and dissociated from legal interpretation, is understood to refer to the particular time of the death of the parent or ancestor, and not to any subsequent indefinite period." Lewis on the Law of Perpetuities, 326.

*Doe* v. *Wetton*, 2 Bos. & Pul. Rep. 324 ; *Pells* v. *Brown*, Cro. Jac. 590 ; *Porter* v. *Bradley*, 2 D. & E. Rep. 143 ; *Langley* v. *Heald*, 7 Watts & Serg. Rep. 96 ; *Mazyck* v. *Vanderhorst*, 1 Bailey, Eq. Rep. 48, are all authorities directly in point.

The following is the language of another highly respectable author upon this point : " Under a devise to A. or to A. and his heirs, and if he die and leave no issue, or without leaving issue, then over, A. would take an estate tail ; but upon a bequest of a term of years, *or other personal estate*, in the same language, A. would take, not the absolute interest, (as he would if the indefinite construction prevailed,) but the entire interest of the testator defeasible on his (A.'s) leaving no issue at the time of his death. *Forth* v. *Chapman*, is the leading authority for this distinction ; but it has been confirmed by a long train of subsequent decisions extending down to the present period (1845,) which show that it applies even where the real and personal estate are comprised in the same gift." 2 Jarman on Wills, 418, 419.

The author cites a large number of authorities in support of this position.

A very recent case to the same point is quoted in an addition to Lewis's Law of Perpet. 85 – 197 ; Law Lib. No. 69.

A question very similar to this underwent an elaborate discussion in *Downing* v. *Wherrin*, decided by the Supeior Court in Rockingham county, July term, 1849 ; and the decision of that cause in favor of the plaintiffs is a strong authority in favor of the position of the complainant in this case.

GILCHRIST, C. J.　The main inquiry in the case, relates to the effect of the bequest of the personal property to Louisa L. Ladd.. Two of the decisions establishing the point that a valid executory devise over may be made of personalty as well as of realty are *Trotter* v. *Oswald,* 1 Cox, 317, and *Wilkinson* v. *South,* 7 T. R. 553 ; and there are numerous other authorities in the books to the same effect.

It is a settled rule, that the same words which would create an estate tail as to freeholds, will give an absolute estate in chattels. 2 Kent, Com. 345 (5th ed.); *Johnson* v. *Bull,* 10 Johns. 19 ; *Patterson* v. *Ellis,* 11 Wend. 259.　But limitations and remainders in chattels are recognized.　*Walker* v. *Denne,* 2 Vesey, Jr. 174, note (a).　In note (a) to the case of *Douglas* v. *Chalmer,* 2 Vesey, Jr. 501, (Sumner's ed.) the decisions are collected, showing that whether there be a bequest of the thing for life, or of its use only, a limitation over upon the death of a legatee will be supported as in the nature of an executory devise ; and this rule seems to have been extensively recognized in the United States.　If the bequest over of the personalty to Nathaniel Ladd, be a valid executory devise, he will be entitled to maintain this bill, but he has no interest in the property, if the will vested the absolute ownership in it in Louisa, as the property would then belong to her husband.

It is settled by a series of decisions too numerous to be here cited, and too strong in the authority of the eminent judges who have sanctioned them, to be successfully impeached at this late day, that where there is a devise of land to A. in fee, and if he should die without issue, then over, the limitation over is void as an executory devise, because it depends upon an indefinite failure of the issue of A.　*Hall* v. *Chaffee,* 14 N. H. Rep. 215, and cases there referred to.　And although in that case some question was made as to the applicability of.the doctrine here, still it will be better that suitors shall not be surprised by another rule of construction, and one different from that found in the books to be generally recognized in England and America.

But, whatever opinion as to the construction of similar devises of real estate may be the better one, there is probably no differ-

ence of opinion as to the position, that in case of a bequest of personal property, courts are inclined to discover and lay hold of any circumstances or expressions connected with the limitations that may afford a ground for construing words referring to a dying without issue, to mean a failure of issue at the time of the death of the ancestor, in order that the limitation over may be supported.

In the case of *Forth* v. *Chapman*, 1 P. Wms. 663, there was a devise of a term to A. and B., and if either of them should die and leave no issue of their bodies, then over. It was held, that the limitation over was valid. In *Doe* v. *Ewart*, 7 Ad. & E. 636, there was a devise of real estate in trust for J. and her heirs, but in case it should happen that J. died without leaving any lawful issue, then over. Lord *Denman* remarked, " we may say without any doubt that the words of the present will, would, if the question arose upon a term for years or other personal estate, now be held to mean a dying without issue living at the death of the daughter Isabella." So also, where a testator bequeathed leasehold property to A. and to his lawful heirs, and if he die and leave no lawful heir, then to B., it was held that the limitation to B. was good, the words " leaving no lawful heir," being in the first place interpreted to mean " leaving no lawful *issue*," and then being confined to " leaving no issue at the time of his death." *Goodtitle* v. *Pegden*, 2 T. R. 720. And where a testator gave personal estate to his nephew and niece, and " upon either of their dying without children, then to the survivor," it was held that the devise over was good. *Hughes* v. *Sayer*, 1 P. Wms. 534. In the case of *Hall* v. *Chaffee*, 14 N. H. Rep. 215, which was a devise of land, the will provided that if the devisee should die without issue born alive of her body *to heir her estate*, the land should go over. It was held that the words *to heir her estate* meant the death of the first taker without issue living at the time of her death, the court considering the circumstances connected with the limitation as reasonably indicating a dying without issue living at the death.

In the present case, the gift is to Louisa and her heirs, " in case she should leave at the time of her decease a living child

or children born of her body," otherwise the property is to go over. This evidently contemplates the state of things existing at the time of her death, that she shall die without leaving any child surviving her. She died without leaving a child, and the bequest over to the orator took effect, and he is entitled to the property.

The counsel for the respondents ingeniously make certain deductions and inferences from the use of the words "devise" and "bequest," and contends that the gift over to the orator is only of the land. But we do not understand the words to be so strictly appropriated to different kinds of property as the counsel seems to suppose. It is true that the word "devise" is more specially appropriated to a gift of lands, and every person taking an interest in the produce of real estate directed to be sold, is, strictly speaking, a devisee, and not a legatee. *Smith* v. *Claxton,* 4 Madd. 492. But the terms are used indifferently; legatees may take under a bequest to "all my devisees above named." *Coope* v. *Banning,* 1 Sim. & Stu. 534. And the word "legacy," may be applied to real estate, if the context of the will show that such was the testator's intention. *Hope* v. *Taylor,* 1 Barr, 268; *Hardacre* v. *Nash,* 5 T. R. 716. And we think the testator's intention sufficiently appears here, to render the distinction between the two words immaterial.

The judgment of the Court is, that the limitation over to the orator is a valid executory devise, and that he is entitled to a decree accordingly.